```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Steve Evans,                         : CIVIL ACTION
      Plaintiff                      :
                                     : 06-2804
      v.                             :
                                     :
MAAX-KSD Corporation,                :
      Defendant.                     :
```

**MEMORANDUM AND ORDER**

**Joyner, J.**                                        **November 29, 2006**

      Presently before the Court is Defendant MAAX-KSD Corporation's ("MAAX-KSD" or "Defendant") Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6), for Summary Judgment Pursuant to Rule 56, and to Dismiss all Remaining State Law Claims Pursuant to 28 U.S.C. 1367(c) ("D. Mot.") (Doc. No. 8), and Plaintiff Steve Evans' ("Evans") response ("P. Mot.") (Doc. No. 10) thereto.  For the reasons below, the Court DENIES Defendant's Motion.

**Background**

      This is an employment discrimination case.  But the issue before the Court is procedural rather than substantive – though no less fundamental.  The Court must determine whether it properly has jurisdiction to entertain Plaintiff's claims.

      Plaintiff alleges that MAAX-KSD, his former employer, discriminated against and ultimately terminated him because of a physical disability in violation of the Americans with Disabilities Act ("ADA") and Pennsylvania Human Relations Act

("PHRA"). See Complaint ("Compl.") ¶¶ 36-46. That this is an ADA action is relevant but the other particulars of Evans' claim are not for the present motion. The only pertinent details regard the procedural history of Plaintiff's suit.

Plaintiff filed two written charges of discrimination and retaliation with the Philadelphia office of the Equal Employment Opportunity Commission ("EEOC"). The first charge was filed on August 22, 2005, the second on or about February 8, 2006. See Compl. ¶ 14(a); Plaintiff's Memorandum of Law in Response ("P. Memo.") (Doc. No. 10) at 2.[1] The EEOC issued a Notice of Right to Sue on March 29, 2006 for each charge of discrimination. See id. Plaintiff filed this two count action on June 27, 2006.

Defendant argues that this Court lacks jurisdiction over Plaintiff's ADA claims arising from either charge of discrimination because he failed to exhaust his administrative

---

[1] In his Complaint, Plaintiff alleges that he filed the second charge of discrimination on January 2, 2006. See Compl. ¶ 14(c). But in his response to Defendant's motion, he asserts that he filed the second charge (dated January 26, 2006) on or about February 8, 2006. See P. Memo at 2. Defendant notes this discrepancy in its motion. See D. Mot. at 3. Because the second charge of discrimination is dated January 26, 2006, Plaintiff could not have filed it on January 2, 2006. For the purposes of this motion, the Court will therefore assume that the second charge was filed with the EEOC on or about February 8, 2006. The correct filing date is ultimately a minor detail as it affects neither the parties' arguments nor the Court's final disposition of Defendant's motion.

remedies.[2]  Defendant contends that the claim arising from the first charge is administratively deficient because Defendant never received notice of the charge.  As for the claim arising from the second charge, Defendant argues that this one is administrative deficient because the EEOC impermissibly issued an early right to sue notice without which Plaintiff cannot properly seek judicial relief.

## Discussion

### I. Standards of Review

*A. Motion to Dismiss*

In considering a 12(b)(6) motion to dismiss, the district courts must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom."  Allah v. Seiverling, 229 F.3d 220, 223 (3d Cir. 2000)(internal quotations omitted).  A motion to dismiss may only be granted where the allegations fail to state any claim upon which relief may be granted.  See Morse v. Lower Merion School

---

[2] To say that the Court lacks jurisdiction is a bit imprecise.  Defendant does not argue that this Court lacks subject matter jurisdiction over Plaintiff's claims.  Rather, Defendant argues that Plaintiff has failed to satisfy certain preconditions for this Court to exercise its jurisdiction.  But had Defendant not challenged that Plaintiff failed to exhaust his administrative remedies, this objection would have been waived without affecting the Court's subject matter jurisdiction.  In other words, this Court has subject matter jurisdiction over a plaintiff's claims whether he does or does not satisfy Title VII's (or the ADA's) administrative prerequisites.  See, e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982)

District, 132 F.3d 902, 906 (3d Cir. 1997). Dismissal is warranted only "if it is certain that no relief can be granted under any set of facts which could be proved." Klein v. General Nutrition Companies, Inc., 186 F.3d 338, 342 (3d Cir. 1999)(internal quotations omitted).

Defendant attached two exhibits to its hybrid motion to dismiss and motion for summary judgment. This is an important detail because on a motion to dismiss the district court's focus is on the complaint (including any attached exhibits and matters of public record) and will ordinarily not consider attachments to a defendant's motion. To consider matters outside the pleadings, the district court must treat the motion as a Rule 56 motion for summary judgment rather than one under Rule 12(b)(6). And though a court may on its own initiative convert a motion to dismiss into one for summary judgment, it must first give notice to the parties of its intention to do so. See Rose v. Bartle, 871 F.2d 331, 342 (3d Cir. 1989). But if an attachment to a motion to dismiss is an "indisputably authentic document" upon which plaintiff's claims are based, the district court may properly consider it when ruling on the motion. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Examples of such documents include criminal case

dispositions, letter decisions of government agencies and published reports of administrative bodies. See id. at 1197.  But typically, courts limit their consideration of these public records to determine whether the procedural prerequisites of a plaintiff's claim have been met. See, e.g., Lightcap-Steele v. KidsPeace Hospital, Inc., No. 05-2578, 2006 U.S. Dist. LEXIS 24518, at * 13-15 (E.D. Pa. Apr. 27, 2006).  Because Defendant offers Plaintiff's first EEOC complaint (Exhibit B) for the limited purpose of challenging whether Plaintiff exhausted his administrative remedies, the Court may properly consider it.

    *B. Summary Judgment*

In deciding a motion for summary judgment under Fed. R. Civ. P. 56, a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (internal citation omitted).  Rule 56(c) provides that summary judgment is appropriate:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

A genuine issue of material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  On a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Upon such a showing, the burden shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." Fed. R. Civ. P. 56(e).  In doing so, the party opposing summary judgment cannot simply rest on the allegations contained in its pleadings and must establish that there is more than a "mere scintilla of evidence in its favor." Anderson, 477 U.S. at 249.  Showing "that there is some metaphysical doubt as to the material facts" is insufficient to defeat a motion for summary judgment. Matsushita Elec. Indus. Co., 475 U.S. at 586.  If the non-moving party fails to create "sufficient disagreement to require submission [of the evidence] to a jury," the moving party is entitled to judgment as a matter of law.  Anderson, 477 U.S.

at 251-52.

## II. Analysis

*A. Does the lack of notice to MAAX-KSD with respect to Plaintiff's Aug. 22, 2005 charge of discrimination deprive this Court of jurisdiction?*

Plaintiff characterizes Defendant's motion for summary judgment with respect to his claim arising from the first charge of discrimination as "ill conceived." P. Memo. at 12.  This is an apt description.  MAAX-KSD argues that Evans failed to exhaust his administrative remedies by failing to provide it notice of the first charge of discrimination. See D. Mot. at 8-10.  While it is a well-established tenet of administrative law that a Title VII or ADA plaintiff must exhaust his administrative remedies before seeking judicial relief, it is equally well-established that such a plaintiff is also "not charged with the [EEOC's] failure to perform its statutory duties." McClease v. R.R. Donnelley & Sons Co., Inc., 226 F. Supp. 2d 695, 704 (E.D. Pa. 2002) (citing Russell v. American Tobacco Co., 528 F.2d 352, 365 (4th Cir. 1975)).  Because the statutory scheme places the responsibility on the EEOC, not a plaintiff, to issue a notice of a charge to an employer, the EEOC's failure to do so does not bar Plaintiff from seeking judicial relief. See 42 U.S.C. § 2000e-5(b) ("the [EEOC] shall serve notice of the charge . . . within

ten days"). The only jurisdictional prerequisites to filing an ADA claim[3] are: (1) filing a charge with the EEOC; and (2) receipt of the EEOC's notice of the right to sue. See Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398 (3d Cir. 1976).[4] The Plaintiff has satisfied both – Evans filed the first charge of discrimination with the EEOC on August 22, 2005 and received a notice of a right to sue on March 29, 2006. The Court therefore has jurisdiction over his ADA claim arising from this charge of discrimination. Accordingly, the Court DENIES Defendant's motion for summary judgment.

*B. Does the Court have jurisdiction over Evans' ADA claim arising from his second charge of discrimination?*

Defendant contends that this Court lacks jurisdiction over Evans' claim arising from his second charge because he failed to exhaust his administrative remedies. Although Evans both properly filed a charge with the EEOC and received a right to sue notice before filing his Complaint, MAAX-KSD argues that Plaintiff's claim is nevertheless administratively deficient

---

[3] "Plaintiffs bringing employment discrimination charges under the ADA must comply with the procedural requirements set forth in Title VII . . . ." Buck v. Hampton Township School District, 452 F.3d 256, 260 (3d Cir. 2006).

[4] A Title VII/ADA plaintiff must also institute his suit within 90 days of receiving a right to sue notice. See 42 U.S.C. § 2000e-(5)(f)(1). MAAX-KSD does not contend that Evans failed to initiate this suit in a timely manner.

because the EEOC failed to spend the "statutorily required 180 days" attempting to broker a reconciliation between the parties. D. Mot. at 4-5. (citing 42 U.S.C. § 2000e-5(f)(1)). Indeed, Defendant insists that not only has Congress mandated this waiting period, but "this Court [has] held the 180 day waiting period is a prerequisite to filing suit." D. Mot. at 5 (citing Pearce v. Barry Sable Diamonds, 921 F. Supp. 149 (E.D. Pa. 1996) (Dalzell, J.)). The Court disagrees.

The EEOC *must* issue a right to sue notice to an ADA (or Title VII) plaintiff if: (1) the EEOC dismisses the charge, or (2) 180 days have elapsed and the EEOC has neither entered into conciliation agreement or filed a civil action. See 42 U.S.C. 2000e-5(f)(1) ("Section 2000e-5(f)(1)"). But the EEOC has also promulgated a regulation[5] that permits it to issue a right to sue notice before expiration of the 180-day period. See 29 C.F.R. § 1601.28(a)(2) ("Section 1601.28(a)(2)").[6] Plaintiff received his

---

[5] The EEOC has the power to promulgate regulations necessary to "carry out the provisions of [Title VII and the ADA]." 42 U.S.C. § 2000e-12(a); see also 42 U.S.C. § 12117(a).

[6] Section 1601.28(a)(2) provides:

> When a person claiming to be aggrieved requests, in writing, that a notice of right to sue be issued, and the charge to which the request relates is filed against a respondent other than a government, governmental agency or political subdivision, the Commission may

right to sue notice for the second charge of discrimination pursuant to this regulation. So whether this Court can exercise jurisdiction over Plaintiff's ADA claim arising from this charge turns on the regulation's validity – an issue that has beguiled federal courts for nearly thirty years;[7] and one that the Third

---

> issue such notice as described in
> § 1601.28(e) with copies to all parties, at
> any time prior to the expiration of 180 days
> from the date of filing of the charge with
> the Commission; provided that the District
> Director, the Field Director, the Area
> Director, the Local Director, the Director of
> the Office of Field Programs or upon
> delegation, the Director of Field Management
> Programs has determined that it is probable
> that the Commission will be unable to
> complete its administrative processing of the
> charge within 180 days from the filing of the
> charge and has attached a written certificate
> to that effect.

29 C.F.R. § 1601.28(a)(2).

[7] Compare Martini v. Fed. Nat'l Mortgage Assoc., 178 F.3d 1336 (D.C. Cir. 1999) (invalidating regulation as contrary to Congress' mandate that the EEOC shall investigate all employment discrimination claims) with Sims v. Trus Joist MacMillian 22 F.3d 1059, 1061-62 (11th Cir. 1994) (upholding validity of Section 1601.28(a)(2)) and Brown v. Puget Sound Elec., 732 F.2d 726, 729 (9th Cir. 1984), cert denied, 469 U.S. 1108 (1985) (same); see generally Seybert v. West Chester Univ., 83 F. Supp. 2d 547, 551 (E.D. Pa. 2000) (cataloguing the split among courts as to the regulation's validity); Johnson v. Cook Composites and Polymers, Inc., No. 99-4916, 2000 U.S. Dist. LEXIS 2330, at *14-16 (D.N.J. Mar. 3, 2000) (same).

Circuit has not definitively ruled on.[8]  The validity of Section 1601.28(a)(2), however, depends on the EEOC's construction of Section 2000e-5(f)(1).  If, for example, Section 2000e-5(f)(1) unambiguously requires the EEOC to wait 180 days before issuing a right to sue notice, then Section 1601.28(a)(2) would be facially invalid and Plaintiff's claim to judicial relief premature.

In reviewing an agency's construction of the statute which it administers the Court must ask "first, always, . . . whether Congress has directly spoken to the precise question at issue." Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842 (1984) ("Chevron"). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Id. at 842-43 ("*Chevron* Step One").  And in determining whether congressional intent is clear, the Court must look to both the statute's language and legislative history. See K Mart Corp. v. Cartier, Inc., 486 U.S. 281, 291 (1988) ("[T]he court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole.").  The "precise question

---

[8] See Moteles v. Univ. Of Pennsylvania, 730 F.2d 913, 917 (3d. Cir. 1984), cert denied, 469 U.S. 855 (1984) (characterizing in dicta that Section 1601.28(a)(2) allows for a "deliberate bypass of administrative remedies").

at issue" here is whether Congress in enacting Section 2000e-5(f)(1) clearly intended for the EEOC not to issue a right to sue notice within 180 days of receiving a complaint.

As another court in this district has noted, Section 2000e-5(f)(1)'s language "is not particularly helpful." Seybert v. West Chester Univ., 83 F. Supp. 2d 547, 551 (E.D. Pa. 2000). It provides, in relevant part:

> If a charge filed with the [EEOC] . . . is dismissed by the [EEOC], or if within one hundred and eighty days from the filing of such charge . . . the [EEOC] has not filed a civil action under this section . . . or the [EEOC] has not entered into a conciliation agreement to which the person aggrieved is a party, the [EEOC] . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . .

42 U.S.C. § 2000e-5(f)(1).  While the statute clearly sets forth two instances (as noted above) in which the EEOC must issue a notice to sue letter, the language does not require that the EEOC wait the full 180 days until issuing a notice.  Indeed, if the EEOC dismisses a charge, it *must* issue a right to sue notice without the claimant (or EEOC) satisfying any other preconditions.  To take a simple example: the EEOC could very well dismiss a charge just 10 days after receiving it.  In that case, the statute does not contemplate a claimant waiting until

180 days has elapsed from the filing of his charge before receiving a right to sue notice.  Rather, it requires the EEOC to issue a right to sue notice immediately.  With respect to the 180-day provision, it isn't a minimum; it's a maximum – the maximum amount of time the EEOC can hold onto a complaint without filing a charge or obtaining a conciliation agreement.  And it should be understood as a maximum with good reason.  Were the EEOC permitted to "investigate" charges of discrimination indefinitely an aggrieved party might never have an opportunity to pursue judicial relief.  See 118 Cong. Rec. 7168 (1972); see also Sims, 22 F.3d at 1063.  But there is no language in the statute that precludes the EEOC from issuing a right to sue letter before the 180-day waiting period has elapsed.  The language Congress chose does not unambiguously mandate a 180-day waiting period.

The statute's legislative history further confirms this observation.  In Seybert, Judge Ludwig thoroughly examined the legislative history and concluded that it was "not less equivocal" than the statute's language.  Seybert, 83 F. Supp. 2d at 551-52.  He observed that a review of the history showed that the legislation had multiple objectives, which cut both in favor and against the view that the 180-day waiting period was

mandatory. See id. (comparing House Reports that indicated on one hand a desire that employment discrimination claims be handled by the EEOC and that 180-day administrative waiting period would foster conciliation and on the other that aggrieved persons must have the option of a prompt remedy in the best manner available) (citations and quotes omitted); see also Sims, 22 F.3d 1062-63 (same); Berry v. Delta Air Lines, Inc., 75 F. Supp. 2d 890, 891-92 (N.D. Ill. 1999) (same).

With neither the statute's language nor legislative history clearly evincing Congress' unambiguous intent to require a mandatory 180-day waiting period, the Court must determine whether the EEOC's interpretation is "based on a permissible construction" of the statute. Chevron, 467 U.S. at 842-43 ("*Chevron* Step Two"). At *Chevron* Step Two, it is not the role of the Court to determine whether the EEOC's interpretation is correct or whether another interpretation is preferable. Indeed, at this step the Court exercises a limited interpretative role. It must only determine whether the EEOC's interpretation of Section 2000e-5(1)(f) is reasonable. And if so, the Court must defer to the EEOC's view. See, e.g., Deane v. Pocono Med. Ctr., 142 F.3d 138, 143 n.4 (3d Cir. 1997) (EEOC regulations are entitled substantial deference) (citations omitted).

The EEOC promulgated Section 1601.28(a)(2) to provide aggrieved persons with the opportunity to pursue judicial relief without waiting 180 days when doing so would be a pointless endeavor.[9]  But an aggrieved person cannot simply request an "early" right to sue notice as a matter of course.  Rather, Section 1601.28(a)(2) requires a director-level decision maker (or designee) to determine and certify that it is probable that the EEOC will be unable to complete the administrative proceedings within 180 days.  That the EEOC has promulgated a regulation that permits it, when necessary, to issue an early right to sue notice is an entirely reasonable interpretation (and implementation) of Section 2000e-5(1)(f).  The EEOC is not *de facto* abandoning its statutory responsibilities to investigate a claim or attempt to facilitate conciliation by issuing an early right to sue notice.  Rather, this practice (via Section 1601.28(a)(2)) reflects the EEOC's expertise that not all employment discrimination claims can be resolved administratively within 180 days.  And to make a claimant simply wait six months before being able to seek judicial relief when the EEOC knows

---

[9] When the EEOC issued Section 1601.28(a)(2) in 1977, it was also responding (at least in part) to dicta in Occidental Life Ins. v. EEOC, 432 U.S. 355, 361 (1977), that the 180-day waiting period was mandatory. See also Seybert, 83 F. Supp. 2d at 549 (recounting the history of Section 1601.28(a)(2)).

that it probably will be unable to complete its investigation (or reach a conciliation agreement) is an exercise in futility.

In light of the ambiguous language and legislative history of Section 2000e-5(1)(f), the EEOC's decision to permit an aggrieved person to sue "early" may reflect the view that the remedial structure of Title VII and the ADA is best served by not having the party sit idly by in administrative limbo.  Whether that is the best interpretation (and implementation) of its statutory responsibilities is not for this Court to decide.  The statute at issue is ambiguous.  If the EEOC's interpretation is far afield from Congress' intent, then it is Congress' responsibility to amend the statute using more precise language that unambiguously announces its intent to require a 180-day waiting period.  Under *Chevron*, it is beyond the purview of federal courts to substitute their own interpretation of an ambiguous statute in place of a reasonable one which the agency entrusted with its enforcement has adopted.

To uphold the EEOC's interpretation of a statute it administers, *Chevron* demands only that the interpretation be reasonable, i.e. permissible.  And under that *highly deferential* standard, Section 1601.28(a)(2) is clearly valid.[10]

---

[10] As previously noted, both the Eleventh and Ninth Circuits have concluded that the statutory language of Section

---

2000e-5(f)(1) is ambiguous as to mandating a 180-day waiting period  and upheld the validity of Section 1601.28(a)(2).  The D.C. Circuit agreed that Section 2000e-5(f)(1)'s language was ambiguous but nevertheless concluded that Section 1601.28(a)(2) was invalid based on its interpretation of the entire statutory scheme with particular emphasis on 42 U.S.C. 2000e-5(b) ("Section 2000e-5b").  See Martini, 178 F.3d at 1347. Central to its analysis was Section 2000e-5b's "mandatory and unqualified" command that the EEOC "'shall make an investigation'" into every charge of discrimination. Id. at 1346 (quoting Section 2000e-5b).  The *Martini* court reasoned that a regulation permitting the EEOC to issue "early" right to sue notices was inconsistent with this statutory directive to investigate each charge administratively.  And, significantly, *Martini* identified two pieces of legislative history that supported this conclusion: one, that the final legislation had the longer of two proposed "waiting periods" (180-day versus 150-day); and, two, that Senator Dominick described the 180-day period as a "filing restriction." Id. at 1347 (citation omitted).  Because the Court finds *Martini*'s reasoning unpersuasive, it has declined to follow it.

First, that the EEOC is required to investigate each charge is not *per se* inconsistent with issuing an early right to sue notice.  Section 2000e-5b requires that there is an investigation and nothing more; it does not require the EEOC to investigate for 180 days.  Indeed, Section 2000e-5b requires that the EEOC "shall make its determination on reasonable cause as promptly as possible and, so far as practicable, not later than one hundred and twenty days from the filing of the charge." 42 U.S.C. § 2000e-5b.  Thus, to read Section 2000e-5(f)(1) to have a mandatory 180-day waiting period would appear to create a timing dilemma for the EEOC.  It is inexplicable that the EEOC could conclude after 120 days (if not earlier) that an aggrieved party's claim has a reasonable basis, and yet not issue a right to sue notice for another 60 days (if not longer) – especially if there appeared to be no chance of a reconciliation.

Second, it is debatable to characterize the legislative history cited by *Martini* as clearly evincing Congress' intent to mandate a 180-day waiting period for Title VII (and ADA) plaintiffs.  It is unclear why selecting a longer "waiting period" forecloses the EEOC's ability to issue early right to sue notices.  And *Martini*'s reasoning on this point is rather conclusory.  The adoption of a longer "waiting period" by Congress can only be understood as permitting the EEOC to retain

Because it was reasonable under Section 2000e-5(1)(f) for the EEOC to issue Plaintiff a right to sue notice less than 180 days after receiving his charge of discrimination, the Court DENIES MAAX-KSD's motion to dismiss Plaintiff's ADA claim arising from this charge.  Accordingly, the Court also retains supplemental jurisdiction over Plaintiff's PHRA claims.[11]

---

a charge of discrimination for an additional 30 days before being *required* to issue a right to sue notice.  While it's true that increasing the number of days the EEOC has to pursue "informal resolution" of the charges suggests a congressional policy disfavoring litigation to resolve employment discrimination claims, the fact that Congress selected 180 rather than 150 days as the period is itself an irrelevant observation to show that the waiting period was mandatory.  Regardless of the number of days Congress chose for the "waiting period," *any* regulation permitting the EEOC to issue an "early" right to sue notice would be invalid if Congress' intent was unambiguously clear that a claimant faced a mandatory waiting period before filing suit.  As for Senator Dominick's statement, the Court rejects the possibility that this lone statement can "persuasively [be] attributed to the entire Congress."  Berry, 75 F. Supp. 2d at 892.

*Chevron* Step One requires a court to first determine whether Congress spoke directly on a matter at issue with *clear* and *unambiguous* intent.  And neither Section 2000e-5(b) nor the legislative history cited by *Martini* (whether considered alone or in tandem) meet this standard.  In particular, the *Martini* court either ignored or did not realize the very real (and somewhat obvious) possibility that the EEOC could both fulfill its Section 2000e-5(b) duty to investigate every claim and issue an early right to sue notice when appropriate.

[11]   Finally, MAAX-KSD placed great stock in the fact that *Pearce v. Barry Sable Diamonds* resolved the 180-day issue in the manner it wished.  *Pearce* is not, however, helpful to Defendant's cause.

First, while *Pearce* did exhaustively discuss the validity of Section 1601.28(a)(2) (even noting that "were it writing on a blank slate, it would find that the EEOC exceeded its authority

**Conclusion**

For the foregoing reasons, the Court DENIES Defendant's motion in its entirety.  An appropriate Order follows.

---

when it issued section 1601.28(a)(2))"), it did not decisively rule on the issue but rather certified three questions to the Third Circuit for interlocutory review, including whether this regulation was valid. 912 F. Supp. at 151, 157-58.  Second, and more importantly, this Court does not agree with the analytical track that *Pearce* follows.

*Pearce* correctly cites EEOC v. Commercial Office Products, Co., 486 U.S. 107, 115-16 (1988), for the standard of deference that a federal court owes to the EEOC.  But this Court believes, respectfully, that *Pearce* misstates that standard to the detriment of its subsequent analysis.  A federal court must defer to the EEOC's reasonable interpretation of an *ambiguous statute* which it is charged with enforcing (in essence *Commercial Office Products* is simply a specific application of *Chevron*). Commercial Office Products, Co., 486 U.S. at 115-16.  *Pearce*, however, describes the court's inquiry as "[EEOC] regulations are valid so long as they are reasonably related to the purposes of Title VII." Pearce, 912 F. Supp. at 154.  But placing the emphasis on whether the promulgated regulation is reasonably related to the purposes of Title VII misdirects a court's focus.  Under the standard of review recited in *Pearce*, the court would have the ability to first consider what are the purposes of Title VII and then decide whether an EEOC regulation was "reasonably related" to those purposes.  In actuality, the court's standard of review is much narrower; it must only consider whether the EEOC's interpretation of an ambiguous statute is reasonable, i.e. a permissible construction of the statute - and not whether the interpretation is correct or the best one available.  As a result, *Pearce* sidesteps the first part of the analysis entirely; namely, whether the statute at issue is ambiguous.  And not surprisingly, the word ambiguous never appears in *Pearce*.  But beyond the issue of bypassing this initial step, the Court also finds *Pearce*'s discussion and evaluation of the EEOC's policy justifications for Section 1601.28(a)(2) as inconsistent with *Chevron*.  Federal courts are not in the business of adjudicating questions of policy when reviewing the EEOC's (or any administrative agency's) interpretation of an ambiguous statute which it is entrusted to administer.

```
             IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Steve Evans,                          :  CIVIL ACTION
        Plaintiff                     :
                                      :  06-2804
        v.                            :
                                      :
MAAX-KSD Corporation,                 :
        Defendant.                    :
```

### ORDER

And now, this 29th day of November, 2006, upon consideration of Defendant MAAX-KSD Corporation's Motion to Dismiss for Failure to State a Claim pursuant to Rule 12(b)(6), for Summary Judgment Pursuant to Rule 56, and to Dismiss all Remaining State Law Claims Pursuant to 28 U.S.C. 1367(c)(Doc. No. 8), and Plaintiff Steve Evans' response (Doc. No. 10) thereto, the Court DENIES Defendant's Motion.

                                    BY THE COURT:


                                    s/J. Curtis Joyner
                                    J. CURTIS JOYNER, J.